# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                               **Case No. 09-CR-267**

**GARY QUEEN**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Gary Queen commenced an on-line dialog with "Maria," whom he believed to be a fifteen-year old girl from Wisconsin, and the two eventually agreed to meet for a sexual liaison. Defendant traveled from his home in Idaho to Wisconsin, but Maria turned out to be an undercover police officer, and defendant was arrested. He pleaded guilty to traveling in interstate commerce for the purpose of engaging in illicit sexual conduct, contrary to 18 U.S.C. § 2423(b), and I set the case for sentencing.

In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the actual sentence on consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010). This memorandum sets forth the reasons for my determinations on these issues.

## I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 24 under U.S.S.G. § 2G1.3(a)(4), then added a 2 level enhancement for use of a computer under § 2G1.3(b)(3). Defendant agreed with the base level but objected to the enhancement.

In pertinent part, § 2G1.3(b)(3) directs the court to add 2 levels if "the offense involved

the use of a computer or an interactive computer service to . . . persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct." The application notes explain that:

> Subsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor. Accordingly, the enhancement in subsection (b)(3) would not apply to the use of a computer or an interactive computer service to obtain airline tickets for the minor from an airline's Internet site.

U.S.S.G. § 2G1.3 cmt. n.4.

In defendant's case, the PSR based the enhancement on defendant's computer chats with Maria. As part of those chats, defendant solicited Maria to travel from Milwaukee to Madison, where he would pick her up and take her to the Wisconsin Dells for a sexual encounter, which defendant discussed in rather graphic detail. Defendant did not contest the facts but rather presented three legal challenges to the enhancement.

Defendant first argued that in order to pass muster under the Commerce Clause, the minor's travel must have been in interstate commerce (just like his travel was); here, Maria's travel would have been within the state of Wisconsin. But defendant cited no case holding that the offender must use the computer to entice the minor to travel interstate. Rather, the guideline applies to using a computer for various purposes, including persuading or enticing the minor to engage in sex, or to travel to engage in sex. I saw no requirement, when travel was involved, that it be interstate. See, e.g., United States v. Lay, 583 F.3d 436 (6th Cir. 2009) (applying the enhancement where the defendant solicited the minor-victim by computer from another state, then traveled to her state to meet her for sex in that state). Nor did defendant cite any case holding that Commerce Clause analysis is required in calculating advisory

2

sentencing guidelines. The guidelines contain many enhancements for conduct that would not otherwise be subject to federal prosecution. In any event, defendant's use of the computer here clearly was in interstate commerce, as he communicated with Maria in Wisconsin from Idaho. To the extent that the guideline should be read require some interstate component, it was present in this case. And, of course, the offense of conviction was properly federal, as defendant traveled in interstate commerce for an unlawful purpose.

Second, defendant argued that the offense of conviction could not have been committed without the use of a computer, given the distance between his home and Maria's. He claimed that computers are part of virtually every mode of communication and have become so ubiquitous that it makes no sense to provide an extra penalty for such use in a case like this. I considered this contention under § 3553(a), as I have in other contexts, see, e.g., United States v. Phinney, 599 F. Supp. 2d 1037, 1042 (E.D. Wis. 2009) (noting that the use of a computer enhancement applies in virtually all child pornography cases), but this policy-type argument provided no reason not to impose the enhancement in calculating the guidelines, which is the first step at sentencing, see, e.g., United States v. Vrdolyak, 593 F.3d 676, 678 (7th Cir. 2010) ("Although a judge is no longer required to give a guidelines sentence, he is required to make a correct determination of the guidelines sentencing range as the first step in deciding what sentence to impose."). The same was true with defendant's argument that this enhancement unfairly lumped him, a lonely, older man suffering from sexual dysfunction, in with true on-line predators.

Third, defendant stated that his case did not involve an actual minor but rather an undercover police officer. However, as he conceded, the application notes to § 2G1.3 define the term "minor" to include "an undercover law enforcement officer who represented to a

3

participant that the officer had not attained the age of 18 years," U.S.S.G. § 2G1.3 cmt. n.1, the precise situation here. Defendant noted that there is an exception to this rule for the § 2G1.3(b)(2)(B) enhancement, see U.S.S.G. § 2G1.3 cmt. n.3(B), but this only shows that the Commission knows how to create such exceptions – requiring an actual minor rather than a decoy – when it wants to.

I therefore overruled defendant's objection and adopted an adjusted level of 26, then deducted 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final level of 23. Combined with defendant's criminal history category of I, level 23 produced an imprisonment range of 46-57 months. I turned then to imposition of sentence under 18 U.S.C. § 3553(a).

## II. SECTION 3553(a)

### A. Sentencing Factors

In imposing the actual sentence, the district court must consider the factors set forth in § 3553(a), see, e.g., United States v. Christiansen, 594 F.3d 571, 576-77 (7th Cir. 2010), which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the [advisory] sentencing [guideline] range[;]
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing – just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Id. In making this determination, the district court may not presume that the guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009), or place any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). The court is also free to reject any guideline on policy grounds, see, e.g., United States v. Pape, 601 F.3d 743, 749 (7th Cir. 2010); United States v. Corner, 598 F.3d 411, 414-15 (7th Cir. 2010) (en banc), so long as it acts reasonably. Ultimately, the court must make an independent determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. See Gall v. United States, 552 U.S. 38, 49-50 (2007). The court must then explain the chosen sentence in order to promote the perception of fair sentencing. Id. at 50.

**B.    Analysis**

    **1.    The Offense**

In June of 2008, defendant struck up a computer chat with a Milwaukee police officer posing as fifteen year old "Maria." Defendant indicated that he planned to travel to the Wisconsin Dells for a convention in August, and he asked Maria to come to the Dells and show him around. Maria agreed, and defendant wrote back, "I don't want to presume that we are

5

gonna get physical unless u don't mind." Maria said she did not mind, and from there the chats turned sexual. Defendant also told Maria to be careful not to let others know she was meeting an older guy because he did not want the law involved.

Defendant asked Maria to send a photo, and the officer sent a picture of a police recruit when she was fourteen or fifteen. During subsequent chats, Maria gave defendant the number of her cell phone, and the two thereafter had several phone conversations. During a July 19, 2008 chat, defendant told Maria to check her archives and make sure the chats were not being saved. He also asked her to send an e-mail saying she was really eighteen. During a July 28, 2008 chat, defendant confirmed plans to meet with Maria on Wednesday, August 6, 2008. He asked her to take a bus to Madison, which would arrive at the same time as his plane. During a July 30 phone call, defendant again confirmed their plans. Specifically, he planned to meet her at a book store in Madison, then drive her to the Dells where they would spend several days together. During an August 1 chat, defendant made additional sexual references about what they would do.

On August 6, 2008, defendant traveled by plane from Idaho to Madison and attempted to rent a car but noticed law enforcement there. He texted Maria asking if she knew why the cops were looking for him, then left to return home by bus. An agent reached him on his cell phone and convinced him to go to the FBI office in Fargo, North Dakota to answer questions. He was arrested when he arrived there.

**2. The Defendant**

At age sixty-one, defendant had no prior criminal record and an otherwise positive background. He grew up on a farm, briefly served in the military, and worked as a Christian missionary, including with teens; the record contained no indication of any inappropriate

6

behavior during that time. In 1993, he obtained a bachelor's degree in theological studies. Since 1999, he managed an elk ranch, and his employer and others in the industry thought highly of him.

Defendant had been married twice and had three children with his first wife, all adults. His son made a positive statement to the PSR writer. His second wife also described him in positive terms, although she did note issues with his internet use, which led to an affair, during their marriage.

In January of 2010, defendant enrolled in sex offender therapy, which seemed to be going well. The counselor indicated that defendant had been conscientious in attendance and in applying himself to the therapy process. Defendant responded well to psycho-educational materials, including triggers for inappropriate behavior, offense cycles, and relapse prevention strategies. Defendant also underwent testing with Dr. Paul Wert, scoring "1" on the STATIC-99, indicating a 6% chance of sexual recidivism at five years and 7% at ten years after release from confinement. According to another test performed by Dr. Wert, the probability of recidivism at seven years was 7% and at ten years 9%. Dr. Wert noted that defendant had no history of prior sex offenses, anti-social behavior, substance abuse, or supervision failure, and he did not in this case use force or threats. Dr. Wert thus found defendant to present a low risk relative to sexual recidivism; defendant's counselor agreed with that assessment.

Finally, defendant performed well on pre-trial release in this case, with no violations or positive tests. The court also received several positive letters from friends, family, and co-workers.

### 3.     **The Sentence**

The guidelines called for a term of 46-57 months, while the parties' plea agreement

7

required defendant to recommend not less than 2 years and the government not more than 5.[1] A prison sentence was needed in this case to reflect the seriousness of the offense, promote respect for the law, and deter others considering doing that defendant did. This may have been a law enforcement sting operation, but I had little doubt that had Maria been real defendant would have gone through with his plan.

Defendant attempted to attribute his conduct to loneliness and the deterioration of his relationship with his girlfriend; he stated that he was in need of affection and attention at a low point in his life. He also pointed to work stress. I did not find this explanation terribly persuasive. Defendant may seek relationships with other adults, on-line or otherwise; but here, he specifically pursued and arranged a sexual encounter with a person he believed to be fifteen years old. He then asked her to send an e-mail claiming she was actually eighteen and advised her to cover her tracks.

I did take into account the absence of any indication that defendant would have been violent, threatening, or physically aggressive with Maria. I also found that his use of a computer, while resulting in a guideline enhancement, did not add all that much; computers are usually part of the offense in these types of cases. See United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009 35 (noting that the § 2G1.3(b)(3) use of a computer enhancement applied in about $^2/_3$ of all cases in FY 2009). I also took into account the collateral consequences flowing from this conviction, which defendant discussed in his sentencing memo.

The other purposes of sentencing did not suggest a need for a significant prison term.

---

[1] At sentencing, the government requested a sentence of 57 months, the high end of the guideline range. Defendant sought a sentence of 2 years.

8

Given his lack of prior record, otherwise positive background, progress in counseling, and the testing suggesting that he presented a low risk of re-offending, I did not see a significant need to protect the public from further crimes of the defendant or to deter him from re-offending. I accepted that this was a deviation from an otherwise generally law-abiding life, not likely to be repeated. The government uncovered no evidence that defendant attempted to entice other minors in similar fashion. Aside from continued mental health treatment, I saw no correctional treatment needs.

Balancing these factors, and under all the circumstances, I found a sentence of 33 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence provided just punishment for this very serious crime, and sufficiently deterred others, while acknowledging the positives in defendant's background and the low risk he posed. This sentence varied modestly from the guidelines, just 3 levels, and because it was based on the particular facts of the case discussed herein it created no unwarranted disparity. The sentence was based on § 3553(a) and would have been the same even if I had agreed with defendant on the guideline objection. See United States v. Sanner, 565 F.3d 400, 406 (7th Cir. 2009).

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 33 months, followed by 5 years of supervised release. The guidelines suggested lifetime supervision, see U.S.S.G. § 5D1.2(b), but given defendant's age, lack of prior record, and progress in treatment, I saw no need for more to ensure monitoring, treatment, or legitimate employment. As conditions of supervised release, I required defendant to provide access to his financial information; comply with specific computer restrictions; participate in a program of mental health assessment and treatment, which may include sex offender treatment; and register with

9

state and local authorities as a convicted sex offender, as required by law.  Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 9th day of November, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge